(May 15, 1905.)

## LE FEVRE v. AMONSON.

### [81 Pac. 71.]

PUBLIC LANDS—CONTEST OF TITLE—MINING CLAIM—SQUATTERS—LAND DEPARTMENT—JURISDICTION OF STATE COURTS.

1. The state courts have no jurisdiction to determine the character of public lands as to whether it is mineral or not while the claims of respective parties are pending before the land department of the general government.

2. When the jurisdiction of the land department is once set in motion, and that tribunal is engaged in an investigation to determine the character of the land, the courts are precluded from trying or determining that question.

3. The decision of the land department on that question is conclusive on the courts.

4. Mere occupancy of public lands by a settler gives him vested right therein as against the United States, and consequently no right against any purchaser from them.

(Syllabus by the court.)

APPEAL from the District Court of Shoshone County. Honorable Ralph T. Morgan, Judge.

An action to quiet title of certain premises in the plaintiffs. Judgment for plaintiffs. Reversed.

Henry P. Knight, for Appellants.

The authorities cited by appellants upon the points decided are found in the opinion.

W. W. Woods, for Respondents, cites no authorities upon the points decided by the court not found in the opinion.

SULLIVAN, J.—It is claimed by the respondents that this is an action in support of an adverse claim or protest, the respondents having settled upon the land as squatters and the appellants, with others, having located said land as a mining claim known as the "Never Sweat lode."

It appears from the record that on the twelfth day of May, 1902, the appellants filed in their own names and the names

of two others in the United States land office at Cœur d'Alene, Idaho, an application for patent for said lode claim, it being United States mineral survey No. 1724, situated in Leland mining district, Shoshone county. Notice of such application for patent was given by publication in the "Wallace Press," a newspaper published in said county; that during the period of publication, to wit, on the fifteenth day of August, 1902, the plaintiffs filed their adverse claim or protest in said United States land office, protesting against said application for patent. And it is alleged in the complaint that "thereupon all proceedings upon said application were stayed to await the final determination of the rights of the parties and that this action was instituted within thirty days from the time of the filing the said adverse claim pursuant to the provisions of section 2326 of the Revised Statutes of the United States."

It appears from the record that said adverse claim was in the nature of a protest, which protest was on October 26, 1902, under instructions from the commissioner of the general land office, dismissed by the register at Cœur d'Alene, and said protestants were notified of their right to appeal and no appeal was taken.

This action was begun on September 13, 1902, and a final decree was entered on June 3, 1904. The action was tried by the court without a jury and judgment was entered in favor of the plaintiffs decreeing to each of the plaintiffs certain portions or parts of the land included in the "Never Sweat lode," which land is described in the decree. Two errors are assigned: 1. The court had no jurisdiction to hear and determine this case; 2. The court erred in entering judgment against the defendants in favor of the plaintiffs.

It is contended by counsel for appellants that as the respondents did not appeal from the order of the commissioner directing their so-called adverse claim or protest to be dismissed, the trial court had no jurisdiction to hear and determine the case. It is also contended that the lands referred to were public lands, part of the public domain of the United States and that said court had no jurisdiction to determine questions of fact with reference to such lands while the claims of the re-

spective parties were pending before the land department, and cites *Marquez v. Frisbie,* 101 U. S. 473, 475, 25 L. ed. 800; *Astiazaran v. Santa Rita Land & M. Co.,* 148 U. S. 80, 13 Sup. Ct. Rep. 457, 37 L. ed. 346; *Hays v. Parker,* 2 Wash. Ter. 198, 3 Pac. 901; *Humbird v. Avery,* 110 Fed. 465, 471; *Savage v. Worsham,* 104 Fed. 18; *Herbein v. Warren,* 2 Okla. 575, 35 Pac. 575; *Allen v. Pedro,* 136 Cal. 1, 68 Pac. 99; *Cosmos Exploration Co. v. Gray Eagle Oil Co.,* 104 Fed. 20.

In Lindley on Mines, second edition, section 108, it is stated, *inter alia:* "But that the courts have no jurisdiction to determine questions of fact with reference to the public lands while the claims of respective parties are pending before the land department, is axiomatic. With the orderly exercise of the functions of that department in administering the public land laws the courts cannot interfere. When, therefore, the jurisdiction of the land department is once set in motion, and that tribunal is engaged in tne investigation which necessarily involves a determination of the character of the land, the courts are precluded from trying or determining this question." The authorities above cited fully sustain the text of said section 108.

In the case at bar the appellants had made application to the proper land department of the government for a patent to the said Never Sweat lode claim. Under the law it was the duty of an adverse claimant to file in the local land office his adverse claim or protest to such application, which the record shows the respondents undertook to do, but for some reason their protest was dismissed and the protestants were notified of their right to appeal from the order of dismissal, and no appeal was taken therefrom. That being true, the court had no jurisdiction to hear and determine this case and erred in entering judgment against the defendants.

It appears from the record before us that the respondents undertook to protect whatever interests they had in the land included in the Never Sweat lode by filing an adverse claim or protest and then brought this suit in support thereof under the provisions of sections 2325 and 2326 of the Revised Statutes of the United States. But the provisions of those sections

relative to adverse claims contemplate proceedings to determine the right of possession between claimants of the same unpatented mineral lands and are not intended to provide proceedings to decide controversies respecting the character of lands, that is, whether they are mineral lands or nonmineral. Their mineral character is a question that must be decided by the land department. (See opinion by Secretary Hitchcock in *Ryan v. Granite Mill M. & D. Co.*, 29 Land Dec. 522.) The secretary says in that opinion that: "No authority of law exists for transferring the proceedings from the land department to the courts for the decision of that question, and hence the decision of the court thereon cannot bind or conclude the land department or relieve it from the duty of making its own decision in the premises."

In *Sparks v. Pierce*, 115 U. S. 408, 6 Sup. Ct. Rep. 102, 29 L. ed. 428, the court said: "Mere occupancy of public lands and improvements thereon give no vested right therein as against the United States and consequently not against any purchaser from them." The main point in this case as stated by counsel for respondents in his brief is that the appellants never at any time had a valid discovery on which to base the location of the Never Sweat lode. And it is urged that the evidence clearly shows that no mineral was ever discovered within the boundaries of said claim on which to base a location. Counsel thus concedes that the character of the land is the main point in issue, and, as we understand the law, that question is one for the land department.

It is stated in *Marquez v. Frisbie*, 101 U. S. 479, 25 L. ed. 800, that: "The decisions of the officers of the land department, made within the scope of their authority, on questions of this kind, are in general conclusive everywhere, except when considered by way of appeal within that department; and that, as to the facts on which their decision is based, in the absence of fraud or mistake, that decision is conclusive even in courts of justice, when the title afterward comes in question. But that in this class of cases, as in all others, there exists in the courts of equity the jurisdiction to correct mistakes, to relieve against frauds and impositions, and in cases where it is

clear that these officers have, by a mistake of the law, given to one man the land which, on the undisputed facts, belonged to another, to give appropriate relief.'' And again: ''But if it can be made entirely plain to a court of equity that on facts about which there is no dispute, or no reasonable doubt, those officers have, by a mistake of the law, deprived a man of his right, it will give relief.''

When we come to examine the evidence in this case, we find a substantial conflict in it as to the character of said land and do not find any such fraud or mistake as would justify a court of equity in holding that the title procured by the mining claimants from the government was held in trust for the appellants. The judgment must be reversed, and it is so ordered, and the cause is remanded for further proceedings in accordance with the views expressed herein. Costs are awarded to appellants.

Stockslager, C. J., and Ailshie, J., concur.