## WRIGHT ET AL. v. THE TOWN OF HARTVILLE.

MINES AND MINERALS — ADVERSE CLAIM — CONTROVERSY BETWEEN MINING CLAIMANT AND TOWNSITE CLAIMANT—JURISDICTION.

1. Section 2326, U. S. Revised Statutes, relating to mineral lands, prescribes a method whereby a competent court may determine the right of possession between two or more mining claimants, but the proceeding thereby authorized is not to determine the character of the lands involved as to whether mineral or non-mineral.

2. Under Section 2326, U. S. Revised Statutes, authorizing a suit in a competent court in support of an adverse claim

against an applicant for a patent to a mining claim, the court has jurisdiction only where the suit is between adverse mining claimants to the same unpatented mineral land. In such a suit the character of the land as to whether mineral or not cannot be put in issue, that being a question solely for the determination of the Land Department.

3. In a suit in support of an adverse claim under Section 2326, U. S. Revised Statutes, the court has no jurisdiction to determine controverted rights between a mining claimant and a townsite claimant, either before or after the issuance of patent to the townsite claimant.

[Decided August 1, 1905.   Rehearing denied October 21, 1905.]
(81 Pac., 649.)

ERROR to the District Court, Laramie County, HON. RICH-ARD H. SCOTT, Judge.

Suit brought by the Town of Hartville in support of an adverse claim against the issuance of a patent for a mining claim. The plaintiff claimed under a townsite patent. The material facts are stated in the opinion.

*Fred D. Hammond* and *W. R. Stoll*, for plaintiffs in error.

When it is necessary to allege certain ultimate facts in a pleading, they must be proven by proper evidence. It is incumbent upon an adverse claimant to a mining claim to make out a *prima facie* case; and a *prima facie* case is not made out by simply proving his own location or possession. A townsite patent does not convey any title to an existing valid mining claim. The mining claimant may possess and enjoy the claim without regard to the townsite patent; and it logically follows that something must be alleged and proven against the mining claim to sustain the adverse under the townsite patent. (U. S. Rev. Stat., Secs. 2386, 2392; 26 Stat. at L., p. 1101; 2 Lindley on Mines, Secs. 720-723; 1 id., Secs. 168-177; Sherlock v. Leighton, 9 Wyo., 297.) Subsequent location certificates filed for the purpose of correcting errors in previous ones all relate back to the previous certificates, and rights of claimants are not at all affected by errors in the original certificate. (R. S. 1899,

Secs. 2546, 2547, 2538; Frisholm v. Fitzgerald (Colo.), 53 Pac., 1109; Morrison v. Regan (Ida.), 67 Pac., 955; Wilson v. Freeman (Mont.), 75 Pac., 84; Mitchell v. Hutchinson (Cal.), 76 Pac., 55; Galbraith v. Iron Co. (Cal.), id., 901; Strepy v. Start (Colo.), 5 Pac., 111; McGinnis v. Egbert, id., 651; Wilson v. Min. Co. (Utah), 56 Pac., 300; Moyle v. Ballene (Colo.), 44 Pac., 69; Duncan v. Fulton (Colo.), 61 Pac., 244.) But the original certificate in this case was sufficient.

Mere occupancy of the public land and making improvements thereon such as is implied in founding a townsite or a town gives no vested right therein against the government or any purchaser from it; and this principle has always been applied to lands which were open for exploration or sale for their minerals. Titles to mineral lands cannot be obtained by occupancy unless the occupancy is for the purpose of mining or extracting minerals. (1 Lindley on Mines, Secs. 170-175; Sparks v. Pierce, 115 U. S., 408; Talbott v. King (Mont.), 9 Pac., 434; Min. Co. v. Clarke (Mont.), 5 Pac., 570; Lode Cases (Mont.), 12 Pac., 858; Chambers v. Jones (Mont.), 42 Pac., 758; Townsite Cases (Ariz.), 15 Pac., 26; Blackmore v. Reily (Ariz.), 17 Pac., 72; Burns v. Clark (Cal.), 66 Pac., 12.)

Under the act of Congress of March 3, 1891, it is not the test to limit the testimony to the mere fact of extracting the ore for profit from the claim, either at a particular time or generally. Such a test may be proper under other statutes, or even under this statute, where the facts of the case make the same applicable, but it is not the only test, or the test to be applied under all circumstances. Where a mining claimant shows a reasonable compliance with the mining laws and is reasonably prior in point of time to the townsite claimant, and is developing the claim with reasonable success, he will be preferred to the townsite claimant. (Davis v. Wiebold, 139 U. S., 507; Shreve v. Min. Co. (Mont.), 28 Pac., 315; Fitzgerald v. Clark (Mont.), 42 Pac., 273; 1 Lindley on Mines, Secs. 86, 94, 98, 172-177, 323, 327-337.)

The court erred in not sustaining the motion of plaintiffs in error to dismiss the case upon concluding the evidence of the defendant in error in chief; in excluding from the evidence the original certificate of location; in laying down the rule that plaintiffs in error were required to show that a prudent man would be justified in expending time and money in extracting ores from the claim at the date of the townsite patent; and from holding that the weight of evidence was in favor of the defendant in error on that point.

*John Charles Thompson* and *J. R. Whitehead,* for defendant in error.

In the absence of an adverse in the United States Land Office, and of a reservation being made in the patent issued to the townsite of mineral lands, the plaintiffs in error are barred from raising the question of character of the land, or asserting their right and title to a mineral claim within the territory included within the townsite patent, so long as it stands. (Lindley on Mines, Secs. 720, 722; Dahl v. Baunheim, 132 U. S., 260.) A *prima facie* case was made out by the claimant in this case. The patent alone was a *prima facie* case under the pleadings. (2 Lindley on Mines, Secs. 604, 713; Cannaugh v. Min. Co., 16 Cal., 341; Wolfley v. Min. Co., 4 Cal., 112; Guilleasio v. Donnellan, 116 U. S., 45; Snow Flake Lode, 4 S. Dak., 30; Pettell v. Min. Co., 9 S. Dak., 63.) Towns may now, under the act of March 3, 1891, be located upon mineral lands, and incorporated cities and towns may obtain title to same, where the territory applied for does not include mines and valid mining claims, the right to which has been made known by adverse proceedings in the land office. The original certificate was entirely insufficient. In a contest between a mining claim and a claim under other laws, the test must be whether the land is more valuable for mineral or otherwise. (Diffeback v. Hawk, 115 U. S., 392; Davis v. Wiebold, 139 U. S., 507; Dower v. Richards, 151 U. S., 658;

Tam v. Story, 21 L. D., 440; 1 Lindley on Mines, Secs. 98, 176; Smith v. Hill, 89 Cal., 122.) Proximity of the lands to mineral lands will not warrant the inference that the land is mineral. (*In re* Williams, 11 L. D., 462; Savage v. Boynton, 12 id., 614.) It is fact and not entry that must control the land office. (Daughie v. Harkans, 2 id., 1021.) Even though a part of the town lands is not in fact occupied for town purposes, it is not for this reason liable to entry by an adverse claimant. (15 L. D., 124.)

(The following cases were cited upon the general proposition that the proof did not show mineral lands within the townsite: Bonner v. Mikale, 82 Fed., 702; *In re* Royal K. Placer, 13 L. D., 86; Kleghorn v. Bird, 4 L. D., 478; Kings County v. Alexander, 5 id., 127; John Downs, 7 id., 73; Alford v. Barnum, 45 Cal., 484; U. S. v. Reed, 28 Fed., 486; Creswell Co. v. Johnson, 4 L. D., 478.) Rights in lands settled upon as a townsite cannot afterwards be taken away by the discovery of a mineral bearing vein somewhere in the neighborhood and by the location of the survey's grant including the townsite.

(On petition for rehearing.) Previous to the passage of the act of Congress approved March 3, 1891, entitled, "An act to repeal timber culture laws and for other purposes," mineral lands could not be acquired under townsite laws. (Hawk v. Diffeback, 115 U. S., 392; Pierce v. Sparks, 115 U. S., 408.) But direct and specific authority for townsite entries to be made by incorporated cities and towns on mineral lands of the United States by that act, the question of the mineral or non-mineral character of the land in a townsite application was removed from the land office, and the question at issue between townsite applicants and mineral entrymen was left to the exclusive jurisdiction of the state courts, to settle the issue as to whether the mineral entryman had a mine of gold, silver, cinnabar or copper, or the right to any valid mining claim or possession had under existing laws—which issue of right and possession has been construed by both United States and state courts

to resolve itself into the issue as to whether the mineral claimant had a mine more valuable for commercial purposes than the land embraced by the conflicting townsite application was for townsite purposes at the date of the townsite entry. The question at issue in this case and tried by the court below was, did the claimants of the Jehosephat lode mining claim have such a valid mining claim as exempted it from the operation of the Hartville townsite patent? The question at issue between the townsite claimants and the conflicting mining claimants has been entertained and decided by both federal and state courts in a great number of adverse suits in which the validity and value of the land claimed by the respective claimants for the purposes claimed was the issue. (Dawson v. Richards, 151 U. S., 658; Davis v. Wiebold, 139 U. S., 507; U. S. v. Reed, 28 Fed., 486; Cowell v. Lammers, 10 Sawy., 246; Alford v. Bornum, 45 Cal., 482.)

When application for a patent is made for a lode claim embraced within a patented townsite, the townsite claimants should protect any rights they may have by filing an adverse claim and securing a judicial determination thereof. If they fail to do so, the United States will not bring suit to vacate the lode patent, is specifically held. (Smoke House Lode, Butte City, 4 L. D., 555; Thomas Starr, 2 L. D., 759; Talbot v. Reif, 6 Mont., 76.)

That the Land Department has no jurisdiction to determine or pass upon controversies between adverse claimants as to rights of possession or questions of title has been uniformly held. (Frederick v. Williams, 17 L. D., 282; Bodie T. & M. Co. v. Bichtel Con. Min. Co., 1 L. D., 584; Bright v. Elkhorn Min. Co., 8 L. D., 122.)

VAN ORSDEL, JUSTICE.

This is a proceeding instituted in the District Court of Laramie County by defendant in error, plaintiff below, under the provisions of Section 2326, Revised Statutes U. S., in support of an adverse claim filed by defendant in error

in the United States Land Office at Cheyenne, Wyoming, against the issuance of a patent to the plaintiffs in error, defendants below, for the Jehosephat lode mining claim, located within the corporate limits of the town of Hartville. It appears that on the 19th day of April, 1902, a patent was issued by the United States to Joseph J. Hophauff, Mayor of said town, in trust for the use and benefit of the occupants of the townsite of Hartville. About the 20th of March, 1899, the plaintiffs in error located a lode mining claim within the boundaries of said townsite, which location was known to exist at the time of the townsite entry. On the 21st day of June, 1902, plaintiffs in error applied in the land office of the United States at Cheyenne for a patent to their mining claim, and caused notice of said application to be published according to law. On the 21st of August, following, the defendant in error filed in said land office an adverse claim against the application of the plaintiffs in error, and thereafter, on the 13th day of September, in the District Court of Laramie County instituted this action in support of said adverse claim. The cause was tried to the court and judgment was entered for the plaintiff. From this judgment defendants prosecute error to this court.

An examination of the pleadings upon which the case was tried and judgment entered in the trial court, discloses that the action is one solely in support of the adverse claim filed by the defendant in error in the land office. The petition contains, among other things, a prayer for a decree quieting title in the plaintiff, but the petition itself is not sufficient to support such a decree. In fact the petition, after setting forth the allegations relating to the filing of an adverse claim in the land office, states, "This suit is brought in support of said adverse claim."

Without enumerating or discussing the errors assigned by plaintiffs in error, we are confronted at the outset with the question of the jurisdiction of the trial court to hear and determine this case. This question seems to have been

overlooked by counsel for both parties, and was not suggested in the briefs filed herein, or presented to the trial court, except by a demurrer to the petition. The demurrer seems to have been abandoned by defendants below, for the record fails to disclose any ruling upon it by the trial court. A question of jurisdiction, however, is too important to be ignored or considered as waived by this court. The action was brought and sought to be maintained under the provisions of Section 2326, Revised Statutes U. S., which, among other things, provides: "Where an adverse claim is filed during the period of publication  .  .  .  it shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim." It will be observed that this statute provides a method by which a court of competent jurisdiction is to determine the right of possession between two or more mining claimants, and not to determine the character of the lands involved as to whether they are mineral or non-mineral. This statute only gives the court jurisdiction of suits when the parties are all mining claimants and when the land embraced in the claim is unpatented government land. It follows, therefore, that the court would not have jurisdiction in a suit in support of an adverse claim, where the parties were all mining claimants and a patent had already been issued to one of the claimants; or where one of the parties is a mining claimant and the other a townsite claimant, whether patent had been issued or not; or, stating the proposition more generally, where one of the parties is an applicant for a patent to mineral land and the other party claims the same, or any part of the land embraced in the mining claim, under any of the laws providing for the disposal of non-mineral lands. In other words, the court has jurisdiction only where the suit is between adverse mining claimants to the same un-

patented mineral land.   The reason for this distinction is apparent.   The entire disposal of the public lands of the United States, under the laws enacted by Congress, is placed in the Land Department of the government.   This department is the court of last resort in determining questions of fact, between contesting claimants, with respect to their rights in acquiring any of the public lands.

The rule is universal that when the question of the character of the land is in issue, it is one for the Land Department to decide, and not for the courts.   We cannot conceive of a court determining the right of possession, as in the case at bar, between a townsite patentee and a mining claimant, without first arriving at a decision as to the character of the land involved.   This is what the trial court did in this case.   Quoting from the decree, the court made the following finding of fact: "And the court further finds that the lands embraced within the limits of said so-called Jehosephat claim, being the same described by the answer of the defendants herein, are more valuable for townsite purposes than for mining or any other purpose, and that the plaintiff is entitled to a decree as prayed for in its petition to quiet its title to said lands against said defendants, and each of them, and all persons claiming or to claim the same, or any part thereof, under or through the said defendants, or either of them."   It appears that the judgment of the District Court was based entirely upon a finding of fact as to the character of the land.   As before stated, in a proceeding such as we are now considering, this is a question for the Land Department and not for the courts.

The above conclusions are supported by the highest authority.   In a leading case, the Supreme Court of the United States, interpreting Sections 2325 and 2326, Revised Statutes U. S., said: "Another reason, which we think more satisfactory, is, that a careful examination of this statute concerning adverse claims leads us to the conviction that it was not intended to affect a party who, before the publication first required, had himself gone through all the

regular proceedings required to obtain a patent for mineral
land from the United States; had established his right to
the land claimed by him, and received his patent; and was
reposing quietly upon its sufficiency and validity.   It is true
that there are no very distinctive words declaring what kind
of adverse claim is required to be set up as a defense against
the party making publication; but throughout the whole of
these sections and the original statute from which they are
transferred to the Revised Statutes, the words 'claim' and
'claimant' are used.   This word is, in all legislation of Con-
gress on the subject, used in regard to a claim not yet per-
fected by a title from the government by way of a patent.
And the purpose of the statute seems to be that, where
there are two claimants to the same mine, neither of whom
has yet acquired the title from the government, they shall
bring their respective claims to the same property, in the
manner prescribed in the statute, before some judicial tri-
bunal located in the neighborhood where the property is,
and that the result of this judicial investigation shall govern
the action of the officers of the Land Department in deter-
mining which of these *claimants* shall have the patent, the
final evidence of title, from the government.   This view is
consistent with the entire statute on the subject, and some
of its language is inconsistent with the idea that any contest
to be thus decided is between a party who already has the
legal title to the property which he claims and some other
party who is only setting up a claim to the same property."
(Iron Silver Mining Co. v. Campbell, 135 U. S., 286.)

That courts have not jurisdiction to entertain actions in
support of adverse claims between a townsite claimant and
a mining claimant, is conclusively disposed of by Lindley
in his work on mines, where the author announces the fol-
lowing rule:   "A townsite occupant could have no legal
right of possession to lands whose mineral character was
known or discovered prior to the townsite entry; conse-
quently he could have no adverse claim in contemplation of
the law, to the title of the mineral applicant.   The relative

position of the parties is parallel to the case of a known
lode embraced within a placer, which is unclaimed by the
placer owner—a subject discussed in a previous section.
If an adverse claim were filed and prosecuted by a townsite
claimant, ordinarily the crucial question would necessarily
be the character of the land; and this is the question the de-
termination of which is confided to the Land Department,
and not to the courts." (Lindley on Mines, Sec. 723.) We
have been unable to find any conflict of authority on this
question. It has been affirmed in numerous decisions. (Pow-
ell v. Ferguson, 23 L. D., 173; Snyder v. Waller, 25 L. D.,
7; North Star Lode, 28 L. D., 41; Iron Silver Mining Co.
v. Campbell, *supra*; Le Fevre et al. v. Amonson et al.
(Idaho), 81 Pac., 71; Richmond Mining Co. v. Rose, 114
U. S., 576.)

The latest expression of opinion by the Land Department
which we have been able to find is in Ryan v. Granite Hill
Mining and Development Co., 29 L. D., 522. In this case
a townsite patentee instituted a suit in support of an ad-
verse claim against a mineral claimant. The facts are very
similar to the case here under consideration. The opinion
was by Van Devanter, Assistant Attorney General, and
clearly states the law governing cases of this character in
the following language: "The mining laws do not author-
ize or provide for adverse proceedings against an applicant
for patent to mineral land by one claiming the same, or any
part thereof, under laws providing for the disposal of non-
mineral lands. The provisions of Sections 2325 and 2326
relative to adverse claims contemplate proceedings to de-
termine only the right of possession as between claimants
of the same unpatented mineral lands; and not to decide
controversies respecting the character of public lands, that
is, whether they are mineral or non-mineral lands. The
townsite entry and patent under Section 2387 of the Revised
Statutes, under which Ryan claims, could only embrace
lands not known to be mineral at the time of entry, and
hence he has no standing as an adverse claimant against

the company's application for patent to the Granite Hill mining claim. The fact that Ryan claims under a patent is only an additional reason for denying him the status of an adverse claimant. (North Star Lode, *supra,* and Iron Silver Mining Co. v. Campbell, *supra.*) So much of the said decision of your office as holds that the said papers filed by Ryan do not constitute an adverse claim within the meaning of the mining laws, and in effect rejects the same, is accordingly affirmed. It follows from what has been said that the suit to quiet title, begun by Ryan against the company, is not such a suit as is contemplated by said Section 2326, and that no stay of the company's proceedings for patent to await the result of that suit is authorized. It is plain that the controlling question in that suit is the character of the land; whether or not at the date of the townsite entry the said town lots contained known valuable mines, or were known to be valuable for minerals, or were embraced in a valid mining claim or possession held under the mining laws; for if they were known then to be valuable for their mines or minerals, or were embraced in a valid mining claim or possession, title to them did not pass out of the United States under the said patent, but still remains in the United States subject to the jurisdiction of the Land Department and to disposal under the mining laws. (Pacific Slope Lode v. Butte Townsite, 25 L. D., 518; Gregory Lode, 26 L. D., 144; and Brady's Mortgagee v. Harris et al., 29 L. D., 426.) In view of the townsite entry and patent, such a question is raised as to all the conflict between the townsite and the said Granite Hill mining claim by the company's proceedings for patent thereto; and this question must be decided, in those proceedings, by the Land Department. No authority of law exists for transferring the proceedings from the Land Department to the courts for the decision of that question, and hence the decision of the court thereon cannot bind or conclude the Land Department, nor relieve it from the duty of making its own decision in the premises." In the same decision, the As-

sistant Attorney General, defining the procedure that should. be followed by the Land Department when a townsite patentee files in the local land office a protest against a mining claimant, said: "You (the Commissioner of the General Land Office) will order a hearing upon notice to the parties herein and to the South Grass Valley townsite authorities, to determine whether, at the date of the townsite entry, the land embraced in the conflict between the same and the Granite Hill mining claim, or any part thereof, contained. known valuable mines, or was known to be valuable for minerals, or was embraced in a valid mining claim or possession held under then existing laws."

The reason for confining jurisdiction of the courts to suits in support of adverse claims between mining claimants to unpatented mineral lands, is apparent. There is no issue as to the character of the land in such case. The only issue for the court to determine is the right of possession, and this is the only question the statute gives the court jurisdiction to consider. It is likewise important that this question should be decided before the issuance of patent. In fact the statute makes the determination of the right of possession a condition precedent to the issuance of a patent, and also makes such decision by the court binding and conclusive upon the department. In discussing the scope of this statute, the Supreme Court of the United States, in Richmond Mining Company v. Rose, *supra*, said: "Looking at the scheme which this statute presents, and which relates solely to securing patents for mining claims, it is apparent that the law intended, in every instance where there was a possibility that one of these claims conflicted with another, to give opportunity to have the conflict decided by a judicial tribunal before the rights of the parties were foreclosed or embarrassed by the issue of a patent to either claimant. The wisdom of this is apparent when we consider its effect upon the value of the patent, which is thereby rendered conclusive as to all rights which could have been asserted in this proceeding, and that it enabled

this to be done in the form of an action in a court of the vicinage, where the witnesses could be produced, and a jury, largely of miners, could pass upon the rights of the parties under instruction as to the law from the court. It is in full accord with this purpose that the law should declare, as it does, that when this contest is inaugurated the land officers shall proceed no further until the court has decided, and that they shall then be governed by that decision; to which end a copy of the record is to be filed in their office. They have no further act of judgment to exercise. If the court decides for one party or the other the Land Department is bound by the decision. If it decides that neither party has established a right to the mine or any part of it, this is equally binding as the case then stands. With all this these officers have no right to interfere. After the decision they are governed by it. Before the decision, once the proceeding is initiated, their function is suspended."

For the reasons stated in this opinion we are forced to the conclusion that the District. Court had no jurisdiction to hear and determine this action. While the petition contains a prayer for the quieting of the title of the defendant in error and the court in its decree attempts to so quiet the title, we are of the opinion that the petition is not sufficient to sustain even this portion of the decree. The suit is clearly an action in support of an adverse claim, and it is so stated in the petition. Under the conditions as they now exist, the court would undoubtedly have jurisdiction, under the statute of this state, to entertain an action to quiet title between the parties to this action, but such a result cannot be reached in the present case. How the Land Department, in the ultimate determination of the rights of the parties, might be influenced by such a decision, if at all, it is unnecessary for us to decide. Since, therefore, an order must be entered directing the dismissal of this action, it is unnecessary for us to consider the errors assigned.

The judgment of the District Court is reversed and the cause remanded with directions to enter an order vacating said judgment and dismissing the case without prejudice.

*Reversed.*

POTTER, C. J., and BEARD, J., concur.

### ON PETITION FOR REHEARING.

VAN ORSDEL, JUSTICE.

This cause was decided at the last term of this court. (81 Pac., 649.) Thereafter, and within time, a petition for rehearing and brief in support thereof were filed by the defendant in error. After a careful examination of the petition and the authorities cited in the brief, we find nothing presented that was not carefully considered at the former hearing.                    *Rehearing denied.*

POTTER, C. J., and BEARD, J., concur.