HECKMAN et al. v. MUMFORD.

(First Division. Juneau. January 16, 1911.)

No. 101KA.

1. PUBLIC LANDS (§ 103*)—INTERIOR DEPARTMENT—JURISDICTION OF COURTS.

Plaintiffs allege in their complaint that they located certain mining claims in Alaska on January 1, 1908, discovered mineral and otherwise complied with the United States mining laws; that defendant claims the land adversely as a portion of his homestead under the agricultural land laws of the United States, and has applied to the Land Department for a patent to the land under the said agricultural land laws; that plaintiffs have filed an adverse claim thereto in the Land Office, which is pending therein; that the land is not agricultural in character but is mineral land and more valuable for the minerals therein contained than it is for agricultural purposes. Plaintiffs deny defendant's right to the land under the law and demand judgment. Defendant demurred to the jurisdiction of the court to determine the character of the land or the right of defendant to a patent under the agricultural land laws. *Held*, the court has no jurisdiction to determine the character of the land in this proceeding, or the right of the defendant to a patent under the agricultural land laws, for the sole jurisdiction to determine

*See same topic & § NUMBER in *Dec. & Am. Digs. Key No. Series & Rep'r Indexes*

both questions is by law under the exclusive jurisdiction of the Department of the Interior.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 298, 299, 307; Dec. Dig. § 103.*]

2. PUBLIC LANDS (§ 103*)—INTERIOR DEPARTMENT—JURISDICTION OF COURTS.

Under its power to dispose of the public domain, the Department of the Interior has sole jurisdiction and power to determine the mineral or nonmineral character of lands so held for disposition. The court has no such jurisdiction. See, also, Behrends v. Goldsteen, 1 Alaska, 518.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 298, 299, 307; Dec. Dig. § 103.*]

This is an action in support of an adverse claim against the issuance of United States patent to the defendant Mumford.

The complaint, among other things, alleges that on the 1st day of January, 1908, plaintiffs, as colocators and co-owners, duly located in pursuance of the mining laws of the United States and regulations thereunder those four certain quartz mining claims, known as the Protection, Otter, May Fly, and Chance; that, at the time the same were located by plaintiffs as aforesaid, the same were vacant, unoccupied, unclaimed mineral lands, and subject to location under the mining laws of the United States, and on said day and year plaintiffs found within the said lines of each of said claims rock in place bearing copper and iron and other precious metals, and thereupon duly located said claims of said mineral, and in locating of same plaintiffs erected monuments at said discovery point and marked the boundaries of each of said claims on the ground by monuments, so that they could be easily traced, and posted a notice describing same at said discovery with reference to natural objects and permanent monuments fully identifying said claims, and recorded said notices in the recorder's office at Ketchikan, Alaska; that by virtue thereof plaintiffs are co-owners of and entitled to the possession of the tract of land included in said lode claims; that the defendant pretends to own and claim adversely to plaintiffs a certain alleged tract of land which has been officially surveyed and is known in the

Land Office as United States survey No. 181, which is set forth in Exhibit A by metes and bounds, and includes within its boundaries the said lands of plaintiffs; that defendant denies plaintiff's interest or right to said mining claims, or any part thereof, all of which claims or pretensions on part of defendant are unlawful and wholly unfounded; that, in pursuance of said wrongful claim of the defendant, the said defendant did on the 9th day of May, 1908, file in the United States Land Office at Juneau, Alaska, his application for patent from the United States under the provisions of the act of Congress approved May 14, 1898 (section 10), relating to homestead rights in Alaska, which said pretended agricultural tract of land, survey No. 181, and by said application and survey accompanying it, includes and embraces plaintiffs' said mining claims, and wrongfully claimed the same as belonging to the defendant; that at the time he published a notice of said application for patent in the Ketchikan Miner, a weekly newspaper published at Ketchikan, Alaska, the first publication being on July 18, 1908, and the last publication of date September 19, 1908; that defendant well knew at the time he made his application for patent for said survey No. 181 that plaintiffs were the owners and entitled to the possession of their said claims; that said land is not agricultural land, but is mineral land in the true sense of the word, and is more valuable for the mineral it contains than for agricultural purposes; that within the 60 days' period of publication, to wit, on September 14, 1908, plaintiffs mailed at Ketchikan, Alaska, to and on September 19, 1908, there was received and filed in the Land Office at Juneau, Alaska, a duly executed and sworn to protest of plaintiffs to said application of defendant for patent, setting forth plaintiffs' adverse claim and its nature and boundaries and extent.

To the complaint the defendant interposed a demurrer as follows: (1) That it appears therefrom that this court has no jurisdiction of the person of the defendant or of the subject of this action, as it appears from the complaint that the plaintiffs are claiming the claims to be mineral in character and by virtue of a location of mining claims thereon according to the laws of the United States, while the defendant is claiming the lands to

be agricultural in character and seeks to obtain patent to the same under the homestead laws of the United States; and there is thus involved a controversy over the character of the land, and this court has no jurisdiction to determine such controversy, but the same is wholly in the jurisdiction of the General Land Office and of the Department of the Interior of the United States; (2) that the complaint does not state facts sufficient to constitute a cause of action, (3) that it appears that such action has not been commenced within the time limited by law.

Charles E. Ingersoll, of Valdez, for plaintiffs.
Maurice D. Leehey, of Seattle, Wash., for defendant.

LYONS, District Judge. It is apparent that the serious question involved is the jurisdiction of the court, since the only question raised by the complaint is the character of the land in controversy.

This action is begun under and by virtue of section 10 of the act of Congress of May 14, 1898 (chapter 299), entitled "An act extending the homestead laws and providing for a right of way for railroads in the district of Alaska, and for other purposes" (U. S. Comp. St. 1901, p. 1470, 30 Stat. 413); Carter's Annotated Alaska Codes, p. 454, as amended by the act of Congress of March 3, 1903 (32 Stat. 1028, c. 1002 [U. S. Comp. St. Supp. 1905, p. 328]), which amendment provides that patents for homesteads in Alaska are obtained on certain conditions and under the procedure in the obtaining of patents to the unsurveyed lands of the United States, as provided by section 10 of the act of May 14, 1898, which latter act, among other things, provides that, when application to purchase unpatented land is made, the Register of the Land Office must publish notice thereof for 60 days, and the application and the plat must be posted on the claim; during the period of posting and publication, or within 30 days thereafter, any person asserting an adverse interest or claim to the land, or any part thereof, may file in the Land Office, where the application is pending, an adverse claim, and such adverse claimant shall, within 60 days

after the filing of such adverse claim, begin an action to quiet title in a court of competent jurisdiction within the district of Alaska, and thereafter no such patent shall issue for such claim until the final adjudication of the rights of the parties, and such patent shall then be issued in conformity with the final decree of the court.

Under the provisions of the statute, has the court jurisdiction to determine the character of the land? So far as I have been able to ascertain, the particular statutes involved, with reference to the jurisdiction of the local courts, to determine the character of the land have not been construed by a court of last resort, although they have been construed by the Land Department. However, many courts of last resort have construed sections 2325 and 2326 of the Revised Statutes in such manner as to shed sufficient light on the question in controversy in this action.

Section 2325, R. S. (U. S. Comp. St. 1901, p. 1429), provides for the securing of patents to mineral lands, and section 2326, R. S. (U. S. Comp. St. 1901, p. 1430), provides for the character of proceedings by adverse claimants against the issuance of United States patents to applicants. Section 2326, among other things, provides that:

"Where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do, shall be a waiver of his adverse claim," etc.

Section 441, R. S. (U. S. Comp. St. 1901, p. 252), provides as follows:

"The Secretary of the Interior is charged with the supervision of public business relating to the following subjects: * * * (2) The public lands, including mines."

Section 453, Rev. St. (U. S. Comp. St. 1901, p. 257), provides:

"The Commissioner of the General Land Office shall perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and, also, such as relate to private claims of lands, and the issuing of patents for all [agents] grants of land under the authority of the government."

Under the last preceding sections cited, it is manifest that the disposal of all public lands is under the exclusive jurisdiction of the Interior Department. Congress, however, has provided by section 2326, Rev. St. U. S., and the act of May 14, 1898, as amended by the act of March 3, 1903, supra, that, when application is made for United States patent of any lands, the local court shall act as auxiliary forums to aid the Land Department in the determination of the right of the applicant or an adverse claimant to a patent for the land applied for. It is obvious from the legislation, however, that the local courts, when acting as such auxiliary forums, possess only the jurisdiction which is expressly conferred upon them by act of Congress.

"Questions as to the character of the land, whether mineral or not, cannot be raised by the filing of an adverse claim, or proceeding thereon, as the question in dispute on an adverse claim must always be tried by the courts, and the Land Office has the exclusive right to determine the character of the land owned by the government. If the Land Department issues a patent to the land to a mineral claimant, it is conclusive that the land is mineral." 27 Cyc. 604.

"The adverse proceedings provided for in section 2325, R. S. U. S., contemplate only suits between adverse mineral claimants, and does not have in view adjudications respecting the character of the land as between agricultural and mineral claimants." Powell v. Ferguson, 23 Land Dec. Dept. Int. 173; Alice Placer Mine, 4 Land Dec. Dept. Int. 314.

"Where the character of the land is involved to the extent that the determination of that question fixes the right to purchase the same, it can only be decided by the executive branch of the government, which is clothed with the power to determine the question. It follows, I think, that there is nothing for the court to determine under the adverse that would aid the department in deciding to whom the patent should issue." Snyder v. Waller, 25 Land Dec. Dept. Int. 7.

In Re Wright v. Town of Hartville, 13 Wyo. 497, 81 Pac. 649, the court uses the following language:

"The entire disposal of the public lands of the United States under the laws enacted by Congress is placed in the Land Department of the government. This department is the court of last resort in determining questions of fact between contesting claimants with respect to their rights in acquiring any of the public lands. The rule is universal that, when the question of the character of the land is in issue, it is one for the Land Department to decide, and not for the courts. We cannot conceive of a court determining the right of possession, as in the case at bar, between a town-site patentee and a mining claimant, without first arriving at a decision as to the character of the land involved. This is what the trial court did in this case. Quoting from the decree, the court made the following finding of fact: 'And the court further finds that the lands embraced within the limits of said so-called Jehosephat claim, being the same described by the answer of the defendants herein, are more valuable for town-site purposes than for mining or any other purpose, and that the plaintiff is entitled to a decree, as prayed for in its petition, to quiet its title to said lands against said defendants, and each of them, and all persons claiming or to claim the same, or any part thereof, under or through the said defendants, or either of them.' It appears that the judgment of the district court was based entirely upon a finding of fact as to the character of the land. As before stated, in a proceeding such as we are now considering, this is a question for the Land Department, and not for the courts."

And on page 507 of 13 Wyo., on page 651 of 81 Pac., the court in the same case said:

"We have been unable to find any conflict of authority on this question. It has been affirmed in numerous decisions. Powell v. Ferguson, 23 Land Dec. Dept. Int. 173; Snyder v. Waller, 25 Land Dec. Dept. Int. 7; North Star Lode, 28 Land Dec. Dept. Int. 41; Iron Silver Mining Co. v. Campbell, 135 U. S. 286 [10 Sup. Ct. 765, 34 L. Ed. 155]; Le Fevre et al. v. Amonson et al. [11 Idaho, 45] 81 Pac. 71; Richman Mining Co. v. Ross, 114 U. S. 576 [5 Sup. Ct. 1055, 29 L. Ed. 273]. * * * The latest expression of opinion by the Land Department which we have been able to find is Ryan v. Granite Hill Mining & Development Co., 29 Land Dec. Dept. Int. 522."

In the case above quoted from, a rehearing was denied in 13 Wyo. 497, 82 Pac. 450.

The courts of Alaska have also recognized this rule in Re Behrends v. Goldsteen, 1 Alaska, 518. Judge Brown discusses this point very fully, and says:

4 A.R.—20

"The Department of the Interior of our government, under the acts of Congress, seems to be vested with the sole power of disposing of public lands, both mineral and nonmineral. The character of the land determines the price to be paid. Mineral lands have always been reserved from pre-emption, homestead, and desert locations and from public grants of railroads. The necessity that this department of the government shall determine the character of the lands held for disposition under the various acts of Congress is often urgent and pressing. To divest it of that power would be equivalent to taking from it all power to act in the disposition of the public domain, until power to determine the character of the public lands should, by act of Congress, be vested in some other department or tribunal. It is sufficient to say at the present time that the only tribunal vested by act of Congress with this power is the Department of the Interior. That department having jurisdiction over all public lands, and alone being vested with the authority to determine the character of the lands under its disposal, it is illogical to hold that this power is transferred to the courts in 'adverse' proceedings under the mining laws, and that in such proceedings the court can be called upon to pass on the question of the mineral or nonmineral character of lands, in order to determine the rights between town lot claimants and mineral claimants."

See, also, Goldstein v. Behrends, 123 Fed. 399, on page 402, 59 C. C. A. 203, on page 206, wherein the court, speaking through Judge Morrow, said:

"Conceding that the action was for the purpose of determining the right of possession, the controlling question was as to the mineral character of the land. This question was within the jurisdiction of the Land Department to determine, and, upon being submitted to that department in the proceedings for a patent, was determined adversely to the appellant by the Secretary of the Interior; that officer holding that the land was not mineral, and awarding the land to the town-site trustee."

See Altoona Quick Silver Mining Co. v. Integral Quick Silver Mining Co., 114 Cal. 100, 45 Pac. 1047; Mattingly v. Lewisohn, 8 Mont. 259, 19 Pac. 310; Iba v. Central Association of Wyoming, 5 Wyo. 355, 40 Pac. 527; Mont Blanc Consolidated Gravel Mining Co. v. DeBour, 61 Cal. 364.

It may be argued that all of the foregoing adjudicated cases construe sections 2325 and 2326, R. S. U. S., which sections refer to the application for patent to mineral lands, and that, under section 2326, the action of an adverse claimant in a court of competent jurisdiction is brought merely for the purpose of determining the question of right of possession, and

the statute merely confers upon the court the power to determine the right of that possession, as between the applicant and the adverse claimant, and that section 10 of the act of May 14, 1898, supra, gives the court more extensive jurisdiction, for such section provides, among other things that:

"Such adverse claimant shall, within sixty days after the filing of such adverse claim, begin action to quiet title in a court of competent jurisdiction within the district of Alaska."

It may be claimed that, under and by virtue of such language, the court has the power to determine any question involved in the quieting of the title, but such contention must proceed on the theory that Congress intended by said act to deprive the Interior Department of the jurisdiction and power of determining the character of the land in such proceedings, for it must be evident that, when the power of two forums must under the law be invoked to determine any one question, the jurisdiction of each must be exclusive while acting within its legal province, for, if the court has the power to determine the character of the land in such a proceeding, then such determination must be binding on the Interior Department or it would be of no value in the determination of the question as to which, the applicant or the adverse claimant, or either, is entitled to a patent. It is therefore manifest that, under a proceeding to obtain patent, the Interior Department and the courts cannot have jurisdiction over the same particular question involved in the determination of the controversy. Either the courts must have exclusive jurisdiction to determine the character of the land, or the Land Department must have such jurisdiction. There is nothing in the act which indicates an intention on the part of Congress to deprive the Land Department of the jurisdiction it has ever exercised since the date of its organization; that is, the determination of the character of the land in patent proceedings. When one applies for patent under a nonmineral application, the Land Department must determine the land to be nonmineral before a patent can issue; and, when an applicant applies for patent for mineral land, the Land Department must determine that such land is mineral before patent can issue to such applicant.

It has been held in Perego v. Dodge, 163 U. S. 160, 16 Sup. Ct. 971, 41 L. Ed. 113, that the character of the action to be brought in a court of competent jurisdiction, under section 2326, R. S. U. S., depends upon whether the adverse claimant is in or out of possession. If out of possession, the action is in the nature of ejectment. If in possession, in the nature of an action to quiet title. And it is intended by section 10 of the act of May 14, 1898, to give the court jurisdiction merely to determine the question as to who has the better title to the property in controversy, the applicant for patent or the adverse claimant, or whether or not either of them has such title as warrants the issuing of patent to either as against the United States, without any reference to the character of the land, for that question must be determined by the Land Department; and, although the court may quiet the title in favor either of the applicant or the adverse claimant, its judgment in that behalf is only binding upon the Land Department, so far as the jurisdiction of the court extends, and such jurisdiction extends only to the determination of the right of either to obtain a United States patent, providing the character of the land is such as the applicant has claimed it to be in his application for patent; in other words, the courts are not authorized to aid the Land Department in any manner in determining the character of the land.

The jurisdiction of the court under section 10 of the act of May 14, 1898, supra, has been construed by the Land Department in a recent unpublished case, dated December 9, 1910, in Re Lowe et al. v. Katalla Co., wherein the Commissioner of the General Land Office used the following language:

"It is not deemed necessary to consider the extent of the jurisdiction vested in the courts by the statutes mentioned or to determine the validity of the adverse claim asserted by Lowe et al., because, in addition to asserting that claim, they have alleged that the tract involved is mineral land containing copper and gold and is valuable for the mineral therein, and is not subject to entry under the nonmineral laws. Regardless of all other questions which might possibly be raised as to the  *  *  *  jurisdiction of this department and of the courts under the statutes cited above, it cannot be said that it was intended to confer upon the courts the exclusive power to adjudicate the mineral or nonmineral character of the lands, and

thus determine the particular laws under which they shall be patented. That power has always been conferred upon and exercised by the Land Department. It is fundamentally essential that the department charged with the execution of the public land laws and the duty of issuing patents should be authorized to determine the character of the lands; and there is no provision in any of the statutes relating to the disposition of Alaskan lands, which justifies the assumption that Congress intended to transfer that power and vest it exclusively in the courts."

It is contended, however, that the court being a court of general jurisdiction, and having under the local laws jurisdiction in all actions of ejectment and actions to quiet title, should proceed to hear, try, and determine an action when one is instituted, regardless of any proceeding in the Land Department. Section 910, R. S. (U. S. Comp. St. 1901, p. 679), provides:

"That no possessory action between persons, in any court of the United States, for the recovery of any mining title or for damages to any such title, shall be affected by the fact that the paramount title to the land in which such mine lies is in the United States, but each case shall be adjudged by the law of possession."

Under said section it is unquestionably true that this court has jurisdiction over possessory actions to mining claims in the district of Alaska and may entertain actions of ejectment or actions to quiet the title of anybody in possession of an unpatented mining claim, and it may be that, in the determination of such an action, it might become necessary for the court to pass upon the character of the land, and no doubt the court would have jurisdiction in such an action to determine for itself such question, but the court then acts independently and does not determine the question of the character of the land, or any other question in the action, for the purpose of aiding any proceeding to obtain patent. Under such circumstances, the court has unlimited jurisdiction, but in patent proceedings it has only such jurisdiction as the acts of Congress expressly confer upon it. It is merely an auxiliary forum to determine certain questions which Congress has seen fit to endow it with jurisdiction to determine for the purpose of aiding the main forum in the determination of the question as to whether or not any party to the controversy is entitled to United States patent for the land in question.

And since the complaint in this action shows that the only question involved is the question of the character of the land, and since the law provides that in all patent proceedings that question must be determined by the Land Department, and since this court is without jurisdiction in this proceeding to determine the question involved, it follows that the demurrer herein should be sustained; and it is so ordered.