432 P.2d 435

**Arthur C. W. BOWEN, Appellant,**

v.

**CHEMI–COTE PERLITE CORPORATION,**
a corporation, Appellee.

No. 8497.

Supreme Court of Arizona.

In Banc.

Oct. 20, 1967.

Rehearing Denied Nov. 21, 1967.

424

Engdahl, Jerman, Butler & Estep, Phoenix, for appellant.

Kramer, Roche, Burch, Streich & Cracchiolo and Spector & Johnson, Phoenix, for appellee.

UDALL, Justice:

This case was commenced in the Superior Court for the County of Pinal by the appellee, Chemi-Cote Perlite Corporation, against the appellant, Arthur C. W. Bowen. An amended declaratory judgment was entered in Chemi-Cote's favor and Bowen appealed to this Court. The case was transferred to the Court of Appeals, Division Two, for decision and that court, in its opinion, affirmed the judgment of the superior court. Thereafter, an amicus curiae brief and reply was filed by the United States and by Chemi-Cote, respectively. The case is here on a petition for review pursuant to Rule 47 (b), Rules of the Supreme Court, 17 A.R.S.

Chemi-Cote is the successor in interest to two lode claims of twenty acres each located on the public domain in 1944. The required discovery and location work to perfect the claims was performed and all annual assessment work or any alternative notices to hold mining claims without assessment work were filed for each year to the present time. Chemi-Cote and its predecessors in interest have been in continuous possession of said lode mining claims since their location and perlite ore has been mined therefrom since 1945.

Bowen is the successor to locators of two placer claims of one hundred sixty acres each, one of which was located in 1950 and the other in 1954. They include within their boundaries Chemi-Cote's lode claims and are based on the same perlite ore. All of the required discovery and location work was done to give the claims validity and the assessment work was done thereafter.

Prior to the commencement of this action, Bowen filed with the United States Bureau of Land Management of the Department of Interior an application for patent and conformed to the federal mining laws as to notice by posting, publication, etc. Chemi-Cote did not file an adverse claim within the sixty-day period prescribed by federal law, but after expiration of the period it did file a protest with the land department against issuance of a patent to Bowen. Departmental proceedings culminated in a decision dismissing the protest based on Chemi-Cote's failure to file an adverse claim. Chemi-Cote Perlite Corp. v. Arthur C. W. Bowen, 72 I.D. 403 (1965). Chemi-Cote thereafter filed its complaint in this action to quiet title to the two lode claims situated within the boundaries of Bowen's placer claims. Bowen answered and counterclaimed to quiet title to his placer claims and for damages for wrongful removal of perlite from his claims. The trial court asserted jurisdiction of the case and received testimony on the question of whether the mineral in question should be located as a lode or as a placer under applicable federal law. Finding that Chemi-Cote's lode claims were validly located with the knowledge of Bowen, that Chemi-Cote and its predecessors had been in continuous possession and performed necessary annual assessment work on its lode mining claims, that the cause of action was possessory and the court had jurisdiction over the parties and the subject matter, and that the right of possession of Chemi-Cote to its mining claims was superior to that of Bowen, the court entered judgment for Chemi-Cote and against Bowen.

The first question raised on appeal was whether the trial court had jurisdiction of the subject matter of the suit. The Court of Appeals, in concluding that the issue of temporary possession was triable by the state court, determined that the validity of Chemi-Cote's lode claims was not at issue before the Land Department because section 37, 30 U.S.C.A. operated to exclude the lode claims from Bowen's patent application. It reasoned that since a perfected mining claim is property in the highest sense, it is not subject to disposal by the United States, and that once a property right is acquired, it would be violative of basic due process concepts to conduct a hearing on its validity without reasonable notice and an opportunity to be heard.

■ Individual rights in public mineral lands can be acquired and held, and an absolute title obtained through the land office, only upon the terms and conditions prescribed by the mining laws of Congress. Lily Mining Co. v. Kellogg, 27 Utah 111, 74 P. 518 (1903); see also, Old Dominion, etc., Smelting Co. v. Haverly, 11 Ariz. 241, 90 P. 333 (1907). The procedure for obtaining title to mineral land by way of a patent application is set forth in section 29, 30 U.S.C.A. and section 30, 30 U.S.C.A. They read in part:

30 U.S.C.A. § 29:

"* * * The register of the land office, upon the filing of * * * (an application for patent to a mining claim) * * * shall publish a notice that such application has been made, for the period

of sixty days, in a newspaper to be by him designated as published nearest to such claim; * * * If no adverse claim shall have been filed with the register of the proper land office at the expiration of sixty days of publication, it shall be assumed that the applicant is entitled to a patent, * * * and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter. * * *" 30 U.S.C.A. § 30:

"Where an adverse claim is filed during the period of publication, * * * all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim. * * *"

Congress has not given the Interior Department jurisdiction to resolve disputes as to the right of possession. When a patent to mineral lands is applied for, however, the jurisdiction of the Department becomes exclusive, and can be stayed only by the filing of an adverse claim as provided by section 30. This Court in Warnekros v. Cowan, 13 Ariz. 42, 108 P. 239 (1910), said:

"Upon the filing of an application for patent to public mineral land, the jurisdiction of the Land Office becomes exclusive as to all questions affecting the title to the lands therein applied for, and so remains until the final determination of the application. The exercise of its jurisdiction may be stayed only by the filing of an adverse claim as provided by section 2326 of the Revised Statutes

(30 U.S.C.A. § 30) of the United States * * *. Without the filing of such adverse claim, neither the state nor federal courts will exercise jurisdiction in actions affecting the title to lands included within the application." 13 Ariz. at 45, 108 P. at 239.

In an adverse proceeding, the court may make one of the three determinations: That the plaintiff is entitled to possession of the claim; that the defendant-applicant is entitled to possession of the claim; that neither are entitled to possession. The judgment of the court is conclusive as between the rights of the competing mining claimants, but such decision does not preclude the Department of Interior from refusing to issue a patent. Clipper Mining Co. v. Eli Mining & Land Co., 194 U.S. 220, 24 S.Ct. 632, 48 L.Ed. 944 (1904).

It is so well established as to be axiomatic that a failure to file an adverse claim within the prescribed period operates as a waiver of all rights which were the proper subject of such a claim. See Turner v. Sawyer, 150 U.S. 578, 14 S.Ct. 192, 37 L.Ed. 1189 (1893); Healy v. Rupp, 37 Colo. 25, 86 P. 1015 (1906); South End Min. Co. v. Tinney, 22 Nev. 19, 35 P. 89 (1894). The following language of the Utah Supreme Court in Lily Mining Co. v. Kellogg, supra, is typical of the case law to this effect:

"It follows that in such statutory actions an allegation by the plaintiff that an adverse claim, in due time and form, showing its nature, boundaries, and extent, was filed in the land office, is traversable and necessary to confer jurisdiction upon the court to decide the controversy * * *, and that 'an action brought in support of such adverse claim must be based upon the right asserted in such claim, for the reason that it must be conclusively assumed that no adverse claim exists, except such as has been filed' (Marshal Silver Min. Co. v. Kirtley, 12 Colo. 410–415, 21 P. 492). * * * Under section 2325, Rev.St.U.S. (U.S. Comp.St.1901, p. 1429), when no adverse claim within the time therein prescribed

is filed, it must be assumed that the applicant is entitled to a patent, and that no adverse claim exists. In Lavagnino v. Uhlig, 26 Utah 1, 71 P. 1046, this court held that the expression in the mining law, 'It shall be assumed,' must be construed to mean 'conclusively assumed.' " 74 P. at 519.

In discussing what is the proper subject of an adverse claim contemplated by sections 29 and 30, the United States Supreme Court in Iron Silver Min. Co. v. Campbell, 135 U.S. 286, 10 S.Ct. 765, 34 L.Ed. 155 (1890) said:

"It is true that there are no very distinctive words declaring what kind of adverse claim is required to be set up as a defense against the party making publication; but throughout the whole of these sections, and the original statute from which they are transferred to the Revised Statutes, the words 'claim' and 'claimant' are used. These words are, in all legislation of congress on the subject, used in regard to a claim not yet perfected by a title from the government by way of a patent; and the purpose of the statute seems to be that, where there are two claimants to the same mine, neither of whom has yet acquired the title from the government, they shall bring their respective claims to the same property, in the manner prescribed in the statute, before some judicial tribunal located in the neighborhood where the property is, and that the result of this judicial investigation shall govern the action of the officers of the land department in determining which of these claimants shall have the patent—the final evidence of title—from the government." 10 S.Ct. at 769.

In quoting with approval from The Eureka Min. Co. v. Richmond Mining Co., 8 Fed.Cas. p. 819, No. 4548, 4 Sawy. 302, the Utah Supreme Court in Lavagnino v. Uhlig, 26 Utah 1, 71 P. 1046 (1903), affirmed 198 U.S. 443, 25 S.Ct. 716, 49 L.Ed. 1119 (1905), in different words indicated the type of adverse claim intended by the statute. It said:

"(U)nder the mining act of 1872, where one is seeking a patent for his mining location, and gives the prescribed notice, any other claimant of an unpatented location objecting to the patent on account of extent or form, or because of asserted prior location, must come forward with his objections and present them, or he will be afterwards precluded from objecting to the issue of the patent." 71 P. at 1049.

The Supreme Court of Montana in O'Hanlon v. Ruby Gulch Mining Co., 48 Mont. 65, 135 P. 913 (1913) said:

"* * * (T)he statute was intended to apply only to those cases in which there are adverse claims arising out of conflicting locations, or where the adverse claimants derive title from different sources." 135 P. at 919.

It is apparent that sections 29 and 30 have been interpreted to require the filing of all adverse claims not yet perfected by a title from the government by way of a patent or be precluded from objecting to the issue of a patent. Until such an adverse claim is filed, the jurisdiction of the Land Department is exclusive, and upon failure to file such a claim within the required time, the state courts are without jurisdiction to hear matters which should have been so raised. If Chemi-Cote's claim in the instant case is "adverse" to Bowen's patent application, we can see no reason to except it from these provisions.

The Court of Appeals takes the position that section 37, 30 U.S.C.A. creates an exception to the requirement of sections 29 and 30, and that Chemi-Cote falls within this exception. This section provides a procedure whereby the owner of an unpatented placer claim can acquire title to lode claims within the boundaries of his placer claim. It reads as follows:

30 U.S.C.A. § 37:

"Where the same person, association, or corporation is in possession of a placer

claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of sections 21–24, 26–30, 33–48, 50–52, 71–76 of this title, including such vein or lode, upon the payment of $5 per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of $2.50 per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section 23 of this title, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof."

■ Undoubtedly it is the law that a claimant to a "known lode or vein" within a placer need not adverse a placer patent application where the lode claimant bases its claims upon a mineral deposit other than that which is the basis of the placer patent application. Clipper Mining Co. v. Eli Mining & Land Co., supra; Sullivan v. Iron Silver Min. Co., 143 U.S. 431, 12 S.Ct. 555, 36 L.Ed. 214 (1892); Iron Silver Min. Co. v. Mike & Starr Gold and Silver Co., 143 U.S. 394, 12 S.Ct. 543, 36 L.Ed. 201 (1892). Section 30 is inapplicable since there is no "question of the right of possession" upon which a state court suit could be brought. Rather than create an exception to the requirement of sections 29 and 30 requiring the filing of adverse claims section 37 is merely a recognition that in this situation no adverse claim exists, for if the lode claim is known and the placer applicant does not claim it in his application, there is no adverse claim and no need to adverse.

■ It cannot be said, however, that an adverse claim does not exist and that consequently there is no need to adverse when, as in this case, the claimed lode is the identical deposit as that supporting the placer patent application. A lode-placer dispute or a dispute over whether certain material is properly located as placer or lode is the proper subject matter of an adverse suit. Duffield v. San Francisco Chemical Co., 205 F. 480 (9 Cir. 1913). In this instance, the two claims cannot coexist and the issue to be decided is whether the mineral deposit, which is claimed by both parties, may be secured as a lode or a placer claim. The ruling of the Land Department, to which the Court of Appeals took issue, that "* * * a lode claimant asserting a right to the same deposit as a placer claimant cannot rely upon the 'known vein or lode' provisions * * *" is a recognition of this principle. Indeed, if such a distinction were not made, in the instant case Bowen's failure to include Chemi-Cote's lode claim in his patent application would act as a disclaimer to any right of possession of the vein or lode claim, but if he did include the lode claim in his application, it would be equivalent to a recognition on his part that the deposit should be located as a lode claim.

■ The Court of Appeals notes that the issuance of a placer patent does not foreclose the rights of known lode claimants. It argues, therefore, that since the filing of an application for a placer patent does not in and of itself put in issue the question of whether there are known lodes within the area covered by the placer patent application, the claims of a known lode claimant cannot be categorized as "adverse" to a placer patent application. Interestingly enough, this argument impliedly admits that if the two claims were adverse, the lode claimant would necessarily have to file an adverse claim notwithstanding the language

of section 37. Furthermore, the weight of the argument is lost because it is based on the situation where the lode claim is based on a deposit different than that supporting the placer claim. Where the same deposit is used to support both a lode and a placer claim, as in the instant case, the placer patent application puts in issue whether there is a "known lode" because the same deposit cannot be located both as a placer and a lode claim. By its very definition there could be no "known lode" if the perlite deposit should have been located as a placer location.

■■ Were we to accept the construction placed upon section 37 by the Court of Appeals, the rights of the parties would be unsettled in the absence of further litigation. As the matter stood pending this decision, the action of the Superior Court giving Chemi-Cote a possessory title to the land in question superior to that of Bowen was not a bar to the adjudication of Bowen's patent application. The judicial determination of the possessory rights of conflicting mining claimants is not necessarily binding upon the Land Department in determining to whom a patent should be issued, and the pendency of such proceedings, having been commenced after expiration of the statutory period for initiating such action, does not bar the issuance of a patent. Madison Placer Claim, 35 L.D. 551 (1907); Nettie Lode v. Texas Lode, 14 L.D. 180 (1892). For these reasons, we are persuaded that the Court of Appeals erred in holding that a lode claimant asserting a right to the same deposit as a placer patent applicant can rely upon the "known vein or lode" provisions of section 37.

■■ It is argued that Chemi-Cote's lode claims are not within the land included in Bowen's patent application for the reason that at the time of the patent application the lode mining claims were the property of Chemi-Cote and not subject to disposal by the United States. The basis for this argument is the language often stated

by the courts that a perfected unpatented mining claim is property—freely transferable, inheritable, taxable, and otherwise carrying with it many of the incidents of real property in general. See e. g. Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735 (1881). The title to an unpatented mining claim is not an absolute title, but merely a possessory title subject to a paramount title in the United States. As against third parties, the locator or his assignees have exclusive right to use the surface of the land for mining purposes, but as against the United States, his right is conditional and inchoate. United States v. Etcheverry, 230 F.2d 193 (10 Cir. 1956). Contrary to Chemi-Cote's argument, a location embracing a prior valid and subsisting location is not *ipso facto* void and ineffectual, but if unopposed, may properly become the subject of mineral patent. Thus, a valid and subsisting location will in no case avail to defeat a junior location, as to which patent proceedings are regularly prosecuted, except upon the invocation of judicial intervention. The Clipper Mining Co. v. The Eli Mining and Land Co., 34 L.D. 401 (1906). Having failed to assert its claim, Chemi-Cote lost its title against the United States and it cannot now defeat Bowen's patent application.

The case of Dahl v. Raunheim, 132 U.S. 260, 10 S.Ct. 74, 33 L.Ed. 324 (1889) requires this same conclusion. There the plaintiff brought an action to quiet title to certain placer mining ground. The defendant asserted title to a portion of the ground as a lode claim made subsequently to the location of the premises as placer mining ground and subsequently to the application by the plaintiff for a patent therefor. To this application, no adverse claim to any portion of the ground was filed by the defendant. The court said:

"It is earnestly objected to the title of the plaintiff that he did not present any proof that the mining ground claimed by him was placer ground. * * * That

it was placer ground is conclusively established, in this controversy, against the defendant, by the fact that no adverse claim was asserted by him to the plaintiff's application for a patent of the premises as such ground. That question is not now open to litigation by private parties seeking to avoid the effect of the plaintiff's proceedings." 10 S.Ct. at 75.

■ From the court's holding in the Dahl case, it follows that Chemi-Cote's failure to adverse conclusively established, as between the two litigants, that Bowen's claim was properly located as a placer deposit. Since a placer discovery will not sustain a lode location, Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567 (1920), Chemi-Cote's location was thus defeated and its possessory title lost.

It is suggested that it would be "violative of basic due process concepts" to read sections 29 and 30, 30 U.S.C.A. as requiring Chemi-Cote to adverse Bowen's patent application. The argument is made that Adams v. Witmer, 271 F.2d 29 (9 Cir. 1958) requires that Chemi-Cote have a remedy through jurisdiction of the state courts to test the loss of its mining claim. We do not think such a conclusion is warranted. The court held that the decision of the Bureau of Land Management in a contest proceeding denying an application for a patent to mining claims was subject to the Administrative Procedure Act. As if distinguishing between that situation and the situation here involving adverse claims, the court said, "Thus § 30 of Title 30 U.S.C.A. provides an elaborate manner for court trial of adverse claims to mining claims as a part of the procedure provided for issuing patents under § 29." Whatever property rights Chemi-Cote acquired in the mining claims involved in this case were not lost because of a non-reviewable decision of an administrative official, but because of its failure to comply with the applicable statutory requirements regulating distribution of the public domain. No allegation

is made by Chemi-Cote that Bowen did not satisfy the statutory requirements of notice.

Bowen, in his pleadings, counterclaimed for damages for wrongful removal of perlite from his claim. The trial court dismissed the counterclaim and entered judgment for Chemi-Cote, which judgment was affirmed by the Court of Appeals. Having concluded that it was error to quiet title to the right of possession of the two lode claims in Chemi-Cote, the question remains whether Bowen is entitled to damages on his counterclaim.

■ A claim for wrongful removal of ore must be characterized as a "possessory action" as distinguished from an "adverse suit." The judgment in a possessory action affects only the title to the ground as between the litigating parties, and the rule to be applied is not that respecting the strength of plaintiff's title, but the rule that the better title prevails. Location is the foundation of the possessory title, and possession thereunder as required by law and local rules and customs keeps the title alive, and the government holds the superior title in trust for the person thus holding the possessory title. Bagg v. New Jersey Loan Company, 88 Ariz. 182, 354 P.2d 40 (1960). The court's determination on the question of right of possession as between the litigating parties is not of binding force and effect as against the United States since the government is not a party to the suit and a right thus effective depends finally upon the character of the land involved. Perego v. Dodge, 163 U.S. 160, 16 S.Ct. 971, 41 L.Ed. 113 (1896).

The Bureau of Land Management has the exclusive jurisdiction, insofar as the parties to this action are concerned, to make a determination as to whether or not perlite is subject to location as lode or placer. The jurisdiction of the state court to rule upon the question of right to possession is not withdrawn, however, because such a determination is not a question "affecting title" to the land embraced by the patent application. See Warnekos v. Cowan, su-

pra. The court below found that the mining claims of Chemi-Cote were located prior to the time Bowen's claims were located and that Chemi-Cote or its predecessors were in continuous possession and performed the necessary annual assessment work since the date of the original location of the two claims. Without determining whether perlite is subject to location as lode or placer, Chemi-Cote had a better right of possession to the area encompassed by the two lode claims in question because of its prior possession than did Bowen. That possessory title was lost, however, by reason of its failure to file an adverse claim to Bowen's patent application within the prescribed period of time.

We hold that Bowen is entitled to damages for ore removed by Chemi-Cote subsequent to the date of Bowen's patent application. See Dahl v. Raunheim, supra. No claim was made by Bowen for ore removed prior to his patent application. During the course of the trial, it was stipulated by counsel that the value of perlite ore in place was fifty cents a ton. The amount of perlite ore removed by Chemi-Cote from the claims in question was also stipulated to. That amount may be determined by referring to the record before the Superior Court, Pinal County, in Case Number 16298.[1]

In pursuance to those stipulations, Bowen is entitled to damages of fifty cents per ton of perlite ore found removed by Chemi-Cote.

The judgment of the trial court quieting title in Chemi-Cote and denying Bowen's counterclaim is reversed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

---

1. The exact number of tons removed from the claims is not in the record before us. At p. 52 of the Reporter's Transcript is the following colloquy between counsel:
Mr. Estep: "You have agreed to the, as I understand it, to the Court consider-

ing the evidence of the number of tons of perlite removed from these claims in Case Number 16298; is that correct?
Mr. Burch: "Yes, we have. Our stipulation was that those figures are accurate and we do not deny the removal."