540 P.2d 767

**Jerome P. MILLS, Charles Black, Fred Plummer, Robert Barkley and Alfred Neault, Jr., Appellants,**

**v.**

**Chester F. ROYSE, Jr., and Karen L. Royse, husband and wife, Rlbert L. Wilson and Sybil Wilson, husband and wife, and Donald G. Charbonneau, Appellees.**

**No. I CA–CIV 2332.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 9, 1975.

---

Howard W. Gibbons, Phoenix, for appellants.

Jennings, Strouss & Salmon by John D. Harris, Leibsohn, Eaton, Gooding, Romley & Monbleau, P.C., by William H. Gooding, Goldstein, Mason & Ramras, Ltd., by David N. Ramras, Phoenix, for appellees.

## OPINION

EUBANK, Judge.

This appeal questions whether the trial court erred in upholding appellees' *placer* location mining claims over appellants' subsequently located and conflicting *lode* mining claims.

On December 15, 1971, the appellees filed their complaint in ejectment and trespass against the appellants alleging generally, that they had the exclusive right to possession of certain United States of America public lands on which they had located four placer mining claims, that the appellants had subsequently located a number of lode claims, some of which overlaid the appellees' located placer claims, thereby constituting a trespass to their possessory interest, and that the lode claims were not located on "the discovery of mineral in place required by law." The appellants answered the complaint placing the allegations at issue, and counterclaimed asking the court to quiet title to their lode claims by entering a declaratory judgment of their rights. The reply put these matters at issue, which were then tried to the court, sitting without a jury. Following extensive testimony from the parties and expert witnesses, the trial judge made extensive findings of fact and conclusions of law upholding the appellees' placer claims and their exclusive possession of the public domain covered by the claims. Appellants appeal from the findings and judgment.

The facts are that appellees' placer claims CHAR—RR Nos. 1–4 were located on February 5, 1957, for the purpose of removing kaolin, (a fine china clay), and amended on February 26, 1961, to correct several minor errors. On October 18, 1968, the appellants located 20 lode claims, G.W. Nos. 1–20, for gold and silver. Several of these lode claims overlapped the CHAR—RR placer claims. The court found that all discovery, location and assessment work was completed by all parties and that all of the claims complied with the legal requirements; consequently, the question in the trial court boiled down to whether kaolin could be properly located as a placer claim. Following the trial, the court made four key findings of fact, as follows:

4. The area in dispute contains an enormous mass of kaolin spread out over an area roughly one-fourth mile by one-half mile. The deposit is partially exposed on the surface through rubble and overburden consisting of alluvium, detritus, sand and gravel which have filled the canyons of the ancient erosional surface of the deposit. The deposit is irregular in outline and reaches a depth in some places of about 400 feet, and in other places 40 feet.

5. The deposit and its immediate environment contain no veins, no hanging wall and no foot wall as these terms are understood by miners.

6. The deposit is hydrothermal in origin and was formed by alteration of rhyolite permeated by hot underground waters and vapors. When the hydrothermal action took place silica was concentrated in the upper region, forming a

thin crust less than 10 feet thick. This silica material does not cap the entire area. Where it exists it grades in hardness downward through the cap to a mass which is principally kaolin. The crust is much harder than the kaolin, but drills easily. Both the cap and the main body of the deposit were originally formed by the same natural process.

7. The kaolin is mined and is valuable for the material itself and not for any mineral or valuable deposits contained in the material. The kaolin deposit is of sufficient value to be exploited commercially.

Appellants cite findings Nos. 4, 6 and 7 and state:

The basic question raised by this appeal is whether this kaolin deposit can be located by placer claims, as Appellees contend, or whether this kaolin deposit must be located by lode claims, as Appellants contend.

Citing the rule that a placer discovery will not sustain a lode location, nor a lode discovery a placer location, *Cole v. Ralph,* 252 U.S. 286, 295, 40 S.Ct. 321, 326, 64 L.Ed. 567, 577 (1920), *Bowen v. Chemi-Cote Perlite Corp.,* 102 Ariz. 423, 431, 432 P.2d 435, 443 (1967), and that a particular mineral deposit is located as a lode or placer depending on its "mode of occurrence—that is to say, whether it is 'in place'—or not 'in place',"　*Lindley on Mines* § 419, p. 982 (3d ed.), appellants contend, based on the findings, that kaolin existed in place and was an alteration of rock in place and therefore could only be located as a lode claim.

The thrust of this argument is to say, as a matter of law, that the trial court erred. We disagree. The issue of placer versus lode claims presented to the trial court was a question of fact, and the primary question before us is whether the record contains sufficient evidence, drawing all inferences therefrom in favor of the findings, to sustain the judgment. *See Iron Silver Mining Co. v. Cheesman,* 116 U.S. 529, 6 S.Ct. 481, 29 L.Ed. 712 (1886); *Bevins v. Dickson Electronics Corp.,* 16 Ariz.App. 105, 491 P.2d 494 (1971); 1 *American Law of Mining* § 4.23. Our review of the record demonstrates to us that there is sufficient evidence to sustain the judgment and that we must affirm the findings and judgment.

The mining law of the United States provides two methods of locating and acquiring its unappropriated mineral lands. *Lode* mining claims are required by 30 U. S.C.A. § 23 to be made upon ". . . veins or lodes of quartz or other rock in place bearing . . . other valuable deposits . . . ." *Placer* claims are located upon other "forms of deposit, excepting veins of quartz, or other rock in place . . . ." 30 U.S.C.A. § 35. Both types of claims are formally located under state law: a *lode* claim pursuant to A.R.S. §§ 27–202 and 27–203, and a *placer* claim pursuant to A.R.S. § 27–207. This statutory dichotomy of *lode* or *placer, placer* or *lode* has given birth to an impressive number of cases attempting to define, authoritatively once and for all, the minerals that must be located as a *lode* claim and as a *placer* claim. In a recent opinion from our Court, *Bowen v. Sil-Flo Corp.,* 9 Ariz.App. 268, 451 P.2d 626 (1969), the following definition of *lode* taken from *Iron Silver Mining Co. v. Cheesman, supra,* was used:

"What constitutes a lode or vein of mineral matter has been no easy thing to define. In this court no clear definition has been given. On the circuit it has been often attempted. Mr. Justice Field, in the Eureka Case, 4 Sawy. 302, shows that the word is not always used in the same sense by scientific works on geology and mineralogy, and by those engaged in the actual working of mines. After discussing these sources of information, he says: 'It is difficult to give any definition of this term, as understood and used in the acts of congress, which will not be subject to criticism. A fissure in the earth's crust, an opening in its rocks

and strata made by some force of nature, in which the mineral is deposited, would seem to be essential to a lode in the judgment of geologists. But to the practical miner the fissure and its walls are only of importance as indicating the boundaries within which he may look for and reasonably expect to find the ore he seeks. A continuous body of mineralized rock lying within any other well-defined boundaries on the earth's surface, and under it, would equally constitute, in his eyes, a lode. We are of opinion, therefore, that the term as used in the acts of congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock.'

"This definition has received repeated commendation in other cases, especially in *Stevens v. Williams,* 1 McCrary, 488, where a shorter definition by Judge Hallett, of the Colorado circuit court, is also approved, to-wit: 'In general it may be said that a lode or vein is a body of mineral, or a mineral body of rock, within defined boundaries, in the general mass of the mountain.'" *Iron Silver Min. Co. v. Cheesman,* 116 U.S. 529, 6 S.Ct. 481, 483, 29 L.Ed. 712 (1886).

This definition was helpful in sustaining the trial court's findings that a perlite ore body, lying primarily on the surface of the land, was properly located as a *lode* and superior to subsequently located *placer* claims. A close reading of Bowen will show that the issue was treated as a fact question and that the location prior in time was upheld over a subsequent location. *See also Bowen v. Chemi-Cote Perlite Corp.,* 5 Ariz.App. 28, 423 P.2d 104 (1967), reversed on other grounds at 102 Ariz. 423, 432 P.2d 435 (1967). In a case similar factually as to this one, *Titanium Actynite Industries v. McLennan,* 272 F.2d 667, 670–671, (10 Cir. 1960), the court, in our opinion, correctly stated:

There can be no unyielding rule of thumb definition of a vein or lode; each case must be decided with reference to its own peculiar facts, Lindley on Mines, Vol. 1, 3d Ed., § 289.[5] It is often said

5. Referring to the acceptance of judicial definitions of lode deposits or placer locations, Lindley said:

"The danger lies in accepting the definitions of either as broadly comprehensive or rigidly restrictive, and attempting to apply them to conditions not within the reasonable contemplation of the law, or in attempting to deprive a locator of the benefit of his discovery, if the thing discovered cannot be forced into the mode of arbitrary definition, either popular or scientific."

that the mineral-bearing rock, to constitute a lode, must be fixed in the enclosing mass of the surrounding country (*Meydenbauer v. Stevens,* D.C.Alaska, 78 F. 787; *Book v. Justice Min. Co.,* C. C.Nev., 58 F. 106; Lindley on Mines, Vol. 1, 3d Ed., §§ 293, 294), it must have fairly well-defined boundaries separating it from the country rock. *Iron Silver Mining Co. v. Cheesman,* supra [116 U. S. 529, 6 S.Ct. 483];[6] *McMullin v. Mag-*

6. In the Cheesman case, the court quoted Justice Field in *Eureka Consolidated Mining Co. v. Richmond Mining Co.,* Fed.Cas. No.4,548, as follows:

" * * * It is difficult to give any definition of this term as understood and used in the acts of congress, which will not be subject to criticism. A fissure in the earth's crust, an opening in its rocks and strata made by some force of nature, in which the mineral is deposited, would seem to be essential to a lode in the judgment of geologists. But to the practical miner, the fissure and its walls are only of importance as indicating the boundaries within which he may look for and reasonably expect to find the ore he seeks. A continuous body of mineralized rock lying within any other well-defined boundaries on the earth's surface, and under it, would equally constitute, in his eyes, a lode. We are of the opinion, therefore, that the term as used in the acts of congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock.' * * * * "

*nuson,* 102 Colo. 230, 78 P.2d 964; *San Francisco Chemical Co. v. Duffield,* 8 Cir., 201 F. 830, certiorari denied 229 U. S. 609, 33 S.Ct. 464, 57 L.Ed. 1350. In

**40**

*McMullin v. Magnuson,* supra, this language was quoted with approval:

"Thus the two essential elements of a lode are (a) the mineral-bearing rock, which must be in place and have reasonable trend and continuity, and (b) the reasonably distinct boundaries on each side of the same." [102 Colo. 230, 78 P.2d 968.]

However, the boundaries or walls do not have to be visually discernible, but instead can be established by assay analysis. *Hyman v. Wheeler,* C.C.Colo., 29 F. 347; *Beals v. Cone,* 27 Colo. 473, 62 P. 948; Lindley on Mines, Vol. 1, 3d Ed. § 294. The country rock need not be totally barren of minerals, but the mineral content of a lode must be appreciably greater than that of the surrounding rock. *Grand Central Min. Co. v. Mammoth Min. Co.,* 29 Utah 490, 83 P. 648. A lode usually is said to exist where the body of mineral-bearing rock has such continuity and apartness that it can be traced in the general enclosing mass. *Hyman v. Wheeler, supra; Eureka Consolidated Min. Co. v. Richmond Min. Co.,* C.C.Nev., Fed.Cas. No. 4,548, affirmed 103 U.S. 839, 26 L.Ed. 557. In *Globe Mining Co. v. Anderson* [78 Wyo. 17], 318 P.2d 373, Justice Parker of the Wyoming Supreme Court presents a thorough analysis of what has been said by writers and the courts about the difficulties not only of the courts, but of practical miners, in attempting to define veins, lodes and rock in place. See note 4, 318 P.2d 377.

One practical legislative solution to this continuing problem, of course, would be to eliminate the difference between lode and placer locations. *See* H. Twitty, "Amendments To Mining Laws," 8 *Ariz.L.Rev.* 63, 82 (1966).

In the case at bar, the trial judge in finding No. 5 found that "the deposit and its immediate environment contain no veins, no hanging wall and no foot wall as these terms are understood by miners." This finding was not contended to be erroneous by the appellant because it was supported by substantial evidence in the record. Rule 52(a), Rules of Civil Procedure, 16 A.R.S., provides that "findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Taking all of these matters into consideration, we believe that the trial court properly held that the prior located placer claims were valid and appellees were entitled to enjoy exclusive possession of the disputed area.

The judgment is affirmed.

HAIRE, Chief Judge, Division 1, and JACOBSON, P. J., concur.